# IN THE SUPREME COURT, STATE OF WYOMING

# 2025 WY 53

APRIL TERM, A.D. 2025

May 14, 2025

DAVID MARTORANO,

Appellant
(Defendant),

v.

MELISSA MAZZEI f/k/a MELISSA
MARTORANO,

Appellee
(Plaintiff).

S-24-0276

*Appeal from the District Court of Natrona County*
*The Honorable Catherine E. Wilking, Judge*

*Representing Appellant:*
    Mary Elizabeth Galvan, Galvan & Fritzen, Laramie Wyoming.

*Representing Appellee:*
    Jordan M. Haack and Anna Reeves Olson, Long Reimer Winegar, LLP, Casper, Wyoming.

*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Chief Justice.**

[¶1]  David Martorano (Father) and Melissa Mazzei (Mother) divorced in 2020. Mother brought the present action to modify child custody and support for the parties' two minor children, BM and EM. The district court increased Father's child support obligation, and in doing so declined to accept the income claimed in Father's most recent confidential financial affidavit (CFA), instead relying on an earlier-filed CFA. Father filed a motion for relief from judgment under W.R.C.P. 60, which the district court granted in part and denied in part. Father now appeals that decision, and we affirm.

## *ISSUE*

[¶2]  The sole issue on appeal is whether the district court erred in denying Father's motion for relief from judgment.

## *FACTS*

[¶3]  Mother and Father married in 2006 and divorced in 2020. They share two children, BM and EM. The initial divorce decree provided for joint legal and physical custody of the children. It also required Father to pay Mother $1,800 per month in child support. Shortly before the decree was entered, Mother moved to Fort Collins, Colorado with BM and EM. In 2022, Mother brought the present action, seeking to modify child custody and support.

[¶4]  In late 2022, the parties each submitted CFAs. Father's CFA reflected a net monthly income of $46,150 and was supported by pay stubs, two years of tax returns, and two years of W-2s. Mother claimed a net monthly income of $6,354, supported by her 2021 W-2 and two years of tax returns.

[¶5]  In October 2023, the parties updated their CFAs. Mother reported a net monthly income of $6,445.11, supported by one paystub and two years of W-2s. Father, acting pro se, reported a net income of -$5,455 per month, a significant reduction from the previous year. Two major changes from his prior CFA caused this decrease. First, Father reported a significant decrease in income from his employment at Wyoming Behavioral Institute (WBI), where he worked as a psychiatrist and chief medical officer.[1] His 2023 CFA reported a net income of $20,170 per month from this job, down from $46,150 per month the previous year. Second, he reported a net income of -$25,625 per month from self-employment as the owner and manager of WY Knot Charters, LLC, an entity whose sole business is to charter his recently-purchased yacht when it is not in his use.

---

[1] In his 2022 CFA, Father listed his positions as psychiatrist and associate medical director.

1

[¶6]    To explain this drastic change, Father attached a statement to his CFA. He explained that various changes at WBI "resulted in a 50% decrease to [his] monthly billable revenue there." He also explained that his ability to work overtime was inconsistent and asserted that "by statute, it does not contribute to income." Father also noted that an increase in remote and off-site work, as well as his wife's pregnancy, would continue to contribute to a decrease in the amount of time he was able to work. Finally, with regard to his LLC, he stated:

> WY knot Charters, LLC has resulted in massive losses during start-up. Although, it's a taxable loss of $540K in 2022 and another $400K in 2023 based on "bonus depreciation" I am taking standard depreciation over 5 years or ~$15,000/ per month, plus real operating losses to be more consistent with current trends of the courts not to look at taxable income, but real income and losses.

Finally, he explained that he declined to include compensation he received from a company called PerfectShift because he no longer received payment from the company since a one-time payment in May 2023.

[¶7]    Father's 2021 W-2 and tax return attached to his 2023 CFA indicated that he made over $600,000 before taxes that year. His 2022 W-2 indicated a slight reduction in income from WBI, but still reflected over $600,000 of pre-tax income from that employer. His 2022 tax return, filed jointly with his wife, reflected significant losses attributed to Father's LLC, resulting in an adjusted gross income of $119,529. He claimed $1,097,044 in losses for the LLC, and this was listed in his Schedule E under "nonpassive loss."

[¶8]    The vast majority of the evidence presented at trial related to child custody issues not relevant to this appeal. Father's wife testified that she and Father started WY Knot Charters, LLC to purchase a yacht and partner with a charter management company to rent it out when they were not using it. She testified that she and Father purchased the "boat" for a price "[i]n the ballpark of one million." She also testified that there were "$150,000 in costs." She explained that she was generally unsure how the tax deductions related to the LLC worked, and noted that the return was prepared by a certified professional accountant. She was also unsure why the $80,000 Father received from PerfectShift was not included in his CFA.

[¶9]    In closing, Mother questioned whether Father's 2023 CFA was reliable. She explained that his claim of a negative monthly income was questionable given his historically high income, as well as his decision to purchase an expensive yacht and attribute his negative income to the costs associated with it. She requested that the district court disregard the 2023 CFA and rely on Father's 2022 CFA instead. Father responded

that his loss of income from PerfectShift, his wife's cessation of employment to prepare for childbirth, and his reduction in hours at WBI explained much of his reduction in income.

[¶10] The district court did not make specific findings regarding the parties' income,[2] but calculated child support based on the figures from their 2022 CFAs rather than their 2023 CFAs. Based on those figures, the court ordered Father to pay the presumptive child support amount of $7,830.94 per month. It also ordered Father to pay $90,464 worth of arrears by paying $15,000 per month until the arrears were paid in full. The district court calculated the total arrears from August 2022, when Mother first brought the modification action, to November 2023, the time of trial.

[¶11] Father filed a motion for relief from judgment under W.R.C.P. 60. He first requested that the district court correct his income to align with his 2023 CFA rather than his 2022 CFA. He also requested that the district court calculate child support arrears starting in October 2022, the first full month after he was served with Mother's modification petition, rather than August 2022, when Mother filed her petition. Father explained that even without accounting for his claimed losses from his LLC, his net monthly income was $20,170, which would result in a presumptive support obligation of $3,749.66 per month. Father argued that the court could not deviate from this amount without making specific findings under Wyo. Stat. Ann. § 20-2-307 (2023). He noted that the court made no specific findings regarding its rejection of his 2023 CFA or any deviation it intended to make from the presumptive obligation. He asserted that the district court was mistaken in using his 2022 CFA and thus correction of his child support obligation was proper under W.R.C.P. 60(a), (b)(1) and (b)(6).

[¶12] The record reflects that the district court held a hearing on Father's motion, but no transcript appears in the record. Following that hearing, the district court granted Father's motion in part and denied it in part, recalculating arrears from a starting date of October 2022 but leaving its child support determination otherwise intact. Father timely appealed the district court's ruling on his W.R.C.P. 60 motion.

*DISCUSSION*

[¶13] Father argues that he was entitled to relief from the district court's judgment under W.R.C.P. 60(a), (b)(1), and (b)(6). Because the standards of review are different under subsections (a) and (b), we discuss each separately.

---

[2] At no point during the trial did either party request written findings of fact under W.R.C.P. 52(a)(1)(A).

3

## I. The district court did not err in denying Father relief under W.R.C.P. 60(a).

[¶14] Under W.R.C.P. 60(a), "[t]he court may correct a clerical mistake or mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record."

> [C]ourts employ a two-part analysis when addressing a Rule 60(a) request for relief. First, a court considers whether the requested correction or clarification relates to a "clerical mistake." . . . Second, a court determines whether the proposed correction or clarification modifies the original judgment. Both parts of the analysis raise questions of law, which we review de novo.

*Stone v. Stone*, 2023 WY 21, ¶ 9, 525 P.3d 634, 636-37 (Wyo. 2023) (citations omitted).

[¶15] With regard to the first prong of this test, "[a] clerical error is a mistake or omission of a mechanical nature apparent on the face of the record that prevents the judgment as entered from accurately reflecting the judgment that was rendered." *Chesapeake Expl., LLC v. Morton Prod. Co., LLC*, 2025 WY 15, ¶ 59, 562 P.3d 1286, 1301 (Wyo. 2025). "[T]he central purpose of Rule 60(a) is to effectuate the contemporaneous intent of the court and to ensure that the judgment reflects that intent." *Stone*, 2023 WY 21, ¶ 8, 525 P.3d at 636 (quoting *Snyder v. Snyder*, 2021 WY 101, ¶ 12, 495 P.3d 876, 879 (Wyo. 2021)). As for the second prong, W.R.C.P. 60(a) cannot substantively modify the original judgment; it can only make a judgment "speak the truth" rather than "say something other than what was originally pronounced." *Stone*, 2023 WY 21, ¶ 13, 525 P.3d at 637 (quoting *Snyder*, 2021 WY 101, ¶ 16, 495 P.3d at 879-80).

[¶16] Father fails to satisfy either prong of this test. The district court's order unambiguously found Father's net income to be $46,150 per month. This corresponded with its equally unambiguous statement in its oral ruling that "[F]ather has a net monthly income of $46,150." Though the district court did not specifically explain why it rejected the income claimed in Father's 2023 CFA in favor of that from his 2022 CFA, there is nothing in the record that indicates anything other than an intent to calculate child support based on a $46,150 per month net income by Father. Thus, the relief Father requested by his motion does not relate to a "clerical mistake." *See Stone*, 2023 WY 21, ¶ 9, 525 P.3d at 636. This lack of ambiguity also causes Father to fail on the second prong of the test, since changing his income in any way would result in a substantive modification of the judgment. *See id.*, ¶ 13, 525 P.3d at 637. The district court properly declined to grant Father relief from its judgment under W.R.C.P. 60(a).

***II.*** ***The district court did not abuse its discretion in denying Father relief under***
***W.R.C.P. 60(b).***

[¶17]  Father also asserts that he was entitled to relief from the district court's judgment
under W.R.C.P. 60(b)(1) and (b)(6). Subsection (b)(1) allows relief based on "mistake,
inadvertence, surprise, or excusable neglect," while subsection (b)(6) allows relief for
"any other reason that justifies relief."

> We review the district court's denial of [a] W.R.C.P. 60(b)
> motion for abuse of discretion. *Campbell v. Hein*, 2013 WY
> 131, ¶ 8, 311 P.3d 165, 167 (Wyo. 2013); *Painovich v.*
> *Painovich*, 2009 WY 116, ¶ 5, 216 P.3d 501, 503 (Wyo.
> 2009). "An abuse of discretion occurs where the district court
> could not reasonably have concluded as it did." *Drury v.*
> *State*, 2008 WY 130, ¶ 8, 194 P.3d 1017, 1019 (Wyo. 2008)
> (citing *Thomas v. State*, 2006 WY 34, ¶ 10, 131 P.3d 348, 352
> (Wyo. 2006)). "[I]t is the movant's burden to bring his cause
> within the claimed grounds of relief and to substantiate these
> claims with adequate proof." *Painovich*, ¶ 5, 216 P.3d at 503
> (citing *In re Injury to Seevers*, 720 P.2d 899, 901 (Wyo.
> 1986)). An order denying relief will be reversed only if the
> trial court was clearly wrong. *Id.* (citing *Seevers*, 720 P.2d at
> 901).

*Olson v. Schriner*, 2020 WY 36, ¶ 15, 459 P.3d 453, 459 (Wyo. 2020) (quoting *SWC*
*Production, Inc. v. World Energy Partners*, 2019 WY 95, ¶ 5, 448 P.3d 856, 858 (Wyo.
2019)).

[¶18]  We have cautioned that our review of an order denying relief under W.R.C.P.
60(b) is "severely limited" and will only address the district court's decision to deny the
motion, not the underlying decision. *Olson*, 2020 WY 36, ¶ 16, 459 P.3d at 459 (quoting
*Essex Holding, LLC v. Basic Properties, Inc.*, 2018 WY 111, ¶ 72, 427 P.3d 708, 728-29
(Wyo. 2018)). An appeal of such an order is not a substitute for a direct appeal. *Olson*,
2020 WY 36, ¶ 16, 459 P.3d at 459. Despite this precedent, Father appears to raise
exactly the type of arguments that could have been made in a direct appeal of the district
court's order modifying child support.

[¶19]  In his brief, Father explains that his W.R.C.P. 60 motion "presumed" that the use
of his 2022 CFA rather than his 2023 CFA "was a simple mistake arising from
inadvertence or oversight, because the district court had not made findings to support its
rejection" of the updated CFA. (footnote omitted). There is no indication in the record
that the court's reliance on the 2022 CFA was inadvertent or an oversight, and the court's
denial of Father's motion after full briefing and hearing from the parties belies the

suggestion. Moreover, the lack of a specific finding rejecting the 2023 CFA is not indicative of a mistake; neither party requested findings of fact, so the court did not make them.[3]

[¶20] Father also submits that there was no credible evidence to conclude that his 2022 CFA was more reliable than his 2023 CFA.[4] "A district court has broad discretion in determining the correct amount of child support." *Marquis v. Marquis*, 2020 WY 141, ¶ 20, 476 P.3d 212, 218 (Wyo. 2020) (quoting *Davidson v. Carillo*, 2014 WY 35, ¶ 7, 325 P.3d 444, 446 (Wyo. 2014)). Part of that discretion lies in the predicate determination of the parties' net incomes. *See Marquis*, 2020 WY 141, ¶¶ 21-39, 476 P.3d at 218-22 (analyzing whether the district court abused its discretion in determining a parent's net income); *Amadio v. Amadio*, 2025 WY 21, ¶¶ 25-32, 564 P.3d 259, 267-69 (Wyo. 2025) (same). The accuracy of the 2023 CFA was disputed by the parties. Had Father wished to challenge the district court's exercise of discretion in determining which CFA was a more accurate representation of Father's income, the means for that challenge was a direct appeal, not a W.R.C.P. 60 motion. *See Olson*, 2020 WY 36, ¶ 16, 459 P.3d at 459 (review of an order denying relief under W.R.C.P. 60(b) considers only the denial of the motion, not the underlying decision).

[¶21] Affirmed.

---

[3] When neither party requests written findings of fact, as occurred here, "it shall not be necessary for the court to state its findings, except generally for the plaintiff or defendant. In the absence of special findings of fact, this Court must consider that the trial court's judgment carries with it every finding of fact to support that judgment." *Amadio v. Amadio*, 2025 WY 21, ¶ 15, 564 P.3d 259, 265 (Wyo. 2025) (citation omitted) (quoting *Morrison v. Hinson-Morrison*, 2024 WY 96, ¶ 20, 555 P.3d 944, 953 (Wyo. 2024)).

[4] This is the closest Father comes to presenting "any other reason that justifies relief" under W.R.C.P. 60(b)(6). "Relief under Rule 60(b)(6) is appropriate only if the grounds asserted for relief do not fit under any of the other subsections of Rule 60(b)." *Myers v. Myers*, 2022 WY 75, ¶ 21, 511 P.3d 470, 476 (Wyo. 2022) (quoting *Morgoles v. Johns*, 798 F.2d 1069, 1073 N.6 (7th Cir. 1986)).